UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LEON WILLIAMS, | No. 2:21-cv-1531 KJM CKD P |
| Petitioner, | |
| v. | ORDER AND |
| WARDEN JIM ROBERTSON, | FINDINGS AND RECOMMENDATIONS |
| Respondent. | |

Petitioner is a California prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254. Following a Solano County jury trial, petitioner was found guilty of first-degree murder. ECF No. 13-4 at 186. On June 6, 2019, petitioner was ordered to serve 50-years-to-life imprisonment. Id. Here, petitioner presents three claims. For the reasons which follow, the court will recommend that petitioner's petition for a writ of habeas corpus be denied.

I. Background

On direct appeal, the California Court of Appeal summarized the evidence presented at trial and other relevant facts as follows:

> The prosecution charged [petitioner] with murdering Michael Weil.
> . . . [Petitioner]'s first trial ended in a mistrial after the jury failed to reach a verdict.

/////

/////

1

*Trial*

In 2013, [petitioner] was dating several women. He had dreadlocks, often wore a red bandana, and usually carried a .22-caliber gun.

[Petitioner]'s girlfriend and her sister, Deirdre B., lived on adjoining properties in Vallejo. Charles D. lived in Deirdre's garage and paid her rent. [Michael] Weil sometimes parked his car in the garage and slept there. Weil did not pay rent. Deirdre did not give [petitioner] permission to collect rent on her behalf.

One evening in early 2013, [petitioner] knocked on the door of the garage. He told Charles he "'wanted to talk to [him].'" [Petitioner] came into the garage. He said Charles "'was going to pay him rent from then on,'" not Deirdre. As he spoke, [petitioner] grew upset and pulled out "a sawed off shotgun" and brandished it. Charles was afraid of [petitioner]. He "got him to leave" by agreeing to pay him rent. Later, [petitioner] got into an argument with Weil. Eventually, [petitioner] walked away, saying, "'I am going to get that old man.'"

In March 2013, [petitioner] was with Elizabeth L., one of the women he was dating. He, Elizabeth, and Kristopher C. smoked methamphetamine, then drove to Deirdre's house. [Petitioner] said he needed to collect rent money. Elizabeth waited in the car while Kristopher and [petitioner] walked up to the garage. [Footnote omitted.] Elizabeth heard a "loud popping" sound, "like a gunshot." From her living room, Deirdre also heard the gunshot. She looked out the window and saw two men—one of whom was petitioner—running from the garage. [Petitioner]'s hair was in dreadlocks. He wore a tank top and a red bandana and held a "long barrel handgun."

[Petitioner] and Kristopher returned to the car at a "fast pace." [Petitioner] got into the driver's seat. [Petitioner] said, "'I killed that mother fucker'" and warned Kristopher "'he better not tell.'" Kristopher was scared, "shaking, trying to keep his composure." Elizabeth was scared, too. [Petitioner] "pulled out a bottle of Everclear" and described what happened. He went to the garage to collect rent money and "the guy"—Weil—told [petitioner] "he didn't have any money for him." [Petitioner] saw the bottle of Everclear and said he was going to take it. Weil responded, "'Over my dead body,'" so [petitioner] "pulled out the gun" and shot him "in the forehead." [Petitioner] seemed to be "bragg[ing] about" it.

With Elizabeth and Kristopher still in the car, [petitioner] drove to a trailer park to dispose of the gun. Then [petitioner] drove to his mother's house and gave her a bloodstained pair of shoes. Eventually, he drove Elizabeth home. Later that day, [petitioner] threatened to kill Elizabeth if she "'ever told.'"

Police found Weil in the garage, dead. He had a gunshot wound in his forehead and a .32-caliber bullet inside his skull. That evening, a police officer saw [petitioner] and asked to speak with him.

2

> [Petitioner] "took off running," discarding a .22-caliber handgun as he ran. The officer eventually apprehended [petitioner], who had a red bandana. An officer swabbed [petitioner]'s clothing for gunshot residue. [Petitioner]'s pants contained one particle "characteristic" of gunshot residue and several particles "consistent" with gunshot residue. A criminalist determined [petitioner]'s pants were "in the vicinity" of a firearm discharge.
>
> Police interviewed Marissa S., another woman [petitioner] dated. On the day of the murder, [petitioner] told Marissa to book a hotel room, and to "take care of the kids and . . . his mom." He said the next time Marissa would see him "would be . . . in prison or behind glass." [Petitioner] also said something to the effect of, "'[t]his was number six'" and he "didn't know what was wrong with him." Kristopher told Marissa about the murder. He said [petitioner] went to the garage to get rent money, and that [petitioner] shot an "old man" in the garage because the man "got smart" and suggested [petitioner] would "'have to shoot [him] for it.'" At trial, Kristopher claimed he was not at the garage on the day of the murder.
>
> [Petitioner] offered expert testimony on gunshot residue analysis and the effect of methamphetamine addiction on memory.

ECF No. 13-8 at 137-139.

On appeal, petitioner raised the same three claims he raises here and all three were denied. Id. at 136-154. Petitioner filed a petition for review in the California Supreme Court again asserting the same three claims, id. at 156-192, and the petition was denied. Id. at 216.

II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.2d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

/////

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;
>
> or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011).  Here, the only reasoned decision was issued by the California Court of Appeal.  ECF No. 13-8 at 136-154.

III. Claims and Analysis

    A. Juror No. 11

After deliberations began, Juror No. 11 was dismissed for making inappropriate comments during deliberations. The Court of Appeal summarized the facts as follows:

> During deliberations, the court dismissed Juror No. 11 for performing outside research and bringing outside information into the jury room. The court conducted an inquiry of the remaining jurors to determine whether they heard Juror No. 11's comments; the court received jurors' assurances that Juror No. 11's comments would not affect their deliberations or their decisions. The court denied defense counsel's mistrial motions, seated an alternate juror, and admonished the jury not to conduct outside research.

ECF No. 13-8 at 139-140.

In his claim concerning Juror No. 11, petitioner complains about the procedure utilized by the trial court after it had come to light that Juror No. 11 presented outside information to the jury. Petitioner's claim arises under California law and petitioner fails to identify any violation of federal law.

As indicated above, the court cannot grant habeas relief under 28 U.S.C. § 2254 for violations of state law. As noted by the Supreme Court in Estelle v. McGuire, 502 U.S. 62, 67-68 (1991):

> [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

Furthermore, "[w]hile courts should liberally interpret pro se pleadings with leniency and understanding, this should not place on the reviewing court the entire onus of creating a federal claim for the petitioner." Burkey v. Deeds, 824 F. Supp. 190, 193 (D. Nev. 1993).

Also, the exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider a claim before presenting it to federal court. Picard v. Connor, 404 U.S. 270, 276 (1971). To provide the applicable state with the necessary "opportunity," petitioner must "fairly present" his

claim "thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal." Id. at 32.

With respect to petitioner's claim concerning Juror No. 11, petitioner failed to present any claim arising under federal law to the California Supreme Court. Therefore, even if the court were to create a cognizable claim for petitioner, the claim would have to be denied for failure to exhaust state court remedies.

Finally, even if the court could construe the petitioner's appellate brief and petition for review as having raised a federal claim concerning Juror No. 11, relief is still precluded here under 28 U.S.C. § 2254(d) as there is no clearly established Supreme Court authority as to the procedures which must be employed by a trial court when extrinsic evidence is presented to a jury.

For all these reasons, petitioner's first claim must be rejected.

B. Instructional Error

Petitioner asserts the trial court committed error by not specifically instructing jurors as to Kristopher C.'s potential culpability for Michael Weil's murder. Again, petitioner fails to claim this amounted to a violation of federal law, so this claim fails for the same reasons as petitioner's claim concerning Juror No. 11.[1]

In any case, state court instructional error does not provide a basis for relief under federal law unless the error "so infected the entire trial that the resulting conviction violates due process." See Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). In determining whether a violation of the Due Process Clause has occurred, the error

---

[1] Under the heading for claim 2, petitioner does cite to "*Chapman v. California* (1967) 386 U.S. 18." However, this is in reference to the harmless error standard applicable with respect to claims arising under California law in California courts. That case has no applicability here because the applicable harmless error standard is found in Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (error is harmless in a federal habeas action unless the error had substantial and injurious effect or influence in determining the jury's verdict).

6

must be viewed in light of the trial record including the instructions that were given.  See Estelle, 502 U.S. at 72; Cupp, 414 U.S. at 147.

Petitioner fails to indicate how jurors should have been instructed and how the instructions which were given were constitutionally inadequate.  Petitioner argues that the state of the evidence and the instructions which were given raises a concern "that the jury would perceive the defense as having a burden to affirmatively *prove* [Kristopher's] involvement, whereas the only actual question for the jury was whether the presence of [Kristopher] at the scene raised a reasonable doubt as to [petitioner's] guilt."  ECF No. 1 at 40-41.  However, this concern is not well-founded.  As noted by the Court of Appeal, the reasonable doubt instructions which were given (CALCRIM Nos. 220 [ECF 13-3 at 277] and 315 [id. at 284]) provided petitioner with "ample opportunity to impress upon the jury that evidence of another party's liability must be considered in weighing whether the prosecution has met its burden of proof."  ECF No. 13-8 at 152 (internal quotations and citations omitted).  Nothing before the court suggests that jurors could have been under the impression that they had to find beyond a reasonable doubt that Kristopher C. killed Michael Weil before finding petitioner not guilty of that offense.

For all these reasons, petitioner's claim concerning instructional error must be denied.

C.  Exclusion of Impeachment Evidence

Finally, petitioner claims that the trial court denied petitioner his Constitutional right to confront accusers by limiting impeachment evidence against Elizabeth.  The Court of Appeal summarized the facts concerning this claim as follows:

> In 2004, Elizabeth testified for the prosecution under an immunity agreement in a sexual assault case, *People v. Delancy* (Super. Ct. Solano County, 2004, No. VCRl 73633) (*Delancy*).  The agreement provided that in exchange for Elizabeth's truthful testimony, the district attorney would not prosecute her for: (1) "any perjury resulting" from her preliminary hearing testimony "regarding whether . . . she was working as a prostitute" in April 2004; and (2) "prostitution based on her activities" in April 2004.
>
> At [petitioner]'s first trial, the court held an Evidence Code section 402 [footnote omitted] hearing (402 hearing) where Elizabeth denied having engaged in prostitution.  At [petitioner]'s second trial, defense counsel moved to admit the immunity agreement as impeachment evidence that Elizabeth engaged in prostitution, and as evidence that she perjured herself in *Delancy* and at the 402

7

> hearing at [petitioner]'s first trial. The court noted that at the first trial, it had ruled the "prostitution thing" was "old." It also suggested the immunity agreement was not "affirmative proof" Elizabeth perjured herself. In addition, the court suggested the evidence was more prejudicial than probative under section 352.
>
> Defense counsel insisted Elizabeth perjured herself at the *Delancy* preliminary hearing and at the 402 hearing at [petitioner]'s first trial, and that the perjury was admissible as a crime of moral turpitude. In response, the prosecutor informed the court that Elizabeth had a 2005 conviction for prostitution; the prosecutor suggested defense counsel was less concerned with Elizabeth's alleged perjury than with besmirching her character. The court scheduled a 402 hearing. . .
>
> The court held a 402 hearing in March 2019. There, Elizabeth recalled testifying at the *Delancy* preliminary hearing in April 2004, where she denied having engaged in prostitution. Elizabeth could not remember receiving immunity for engaging in prostitution or committing perjury at the *Delancy* preliminary hearing. Nor did Elizabeth recall signing an immunity agreement. She did not recognize the signature on the immunity agreement and explained she did not sign a letter in her last name "like that."
>
> Elizabeth denied engaging in prostitution in 2004 and denied being arrested for, or convicted of, prostitution. When pressed by the prosecutor, however, she acknowledged being arrested for prostitution. She "got into [a] car with a police officer" and was immediately arrested; she denied trading sex for money. When cross-examined, Elizabeth acknowledged working as a prostitute "once" but denied lying at the *Delancy* preliminary hearing and said there was no evidence she worked as a prostitute in 2004.
>
> Defense counsel argued Elizabeth lied at the *Delancy* preliminary hearing and lied about receiving immunity and working as a prostitute. The court responded that the prostitution—and the alleged perjury—were more than 10 years old, and that defense counsel had not offered "proof of perjury," such as a preliminary hearing transcript showing Elizabeth lied. It characterized the probative value of the evidence as "nominal compared to the delay, to the chaos, to the tangential issues" it would generate. As the court explained, the "fact that [Elizabeth] was a prostitute" was irrelevant and prejudicial, and the "deeper dive about whether . . . she lied" was a tangential distraction.

ECF No. 13-8 at 146-148.

The Court of Appeal then addressed petitioner's Confrontation Clause claim as follows:

> [Petitioner] claims the court abused its discretion by not allowing him to impeach Elizabeth with evidence that she committed perjury at the 402 hearing at his second trial. [Footnote omitted.] According to [petitioner], Elizabeth perjured herself when she

8

denied engaging in, and being convicted of, prostitution, and when she denied receiving immunity.

"The trial court has broad discretion in determining the admissibility of evidence." (*People v. Bedolla* (2018) 28 Cal.App.5th 535, 555.)  A trial court's exclusion of "'evidence offered for impeachment is reviewed for abuse of discretion and will be upheld unless the trial court "exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*Ibid*.)  An erroneous evidentiary ruling is harmless if the "record demonstrates 'it is not reasonably probable that a result more favorable to defendant would have occurred in the absence of error.'" (*Ibid*.)

Impeachment evidence based on conduct falling short of a felony conviction must satisfy two requirements to be admissible.  First, it must involve "moral turpitude." (*People v. Wheeler* (1992) 4 Cal.4th 284, 296; *People v. Edwards* (2013) 57 Cal.4th 658, 722.)  Second, it must pass muster under the balancing test of section 352, which grants the court the discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create a substantial danger of prejudice, of confusing the issues, or of misleading the jury. (*Wheeler*, at pp. 296-297.)

The court's ruling was not an abuse of discretion.  Perjury is a moral turpitude offense (*People v. Chavez* (2000) 84 Cal.App.4th 25, 28), but the court reasonably concluded [petitioner] did not establish Elizabeth committed perjury at the 402 hearing.  "The elements of perjury are: 'a "willful statement, under oath, of any material matter which the witness knows to be false."'" (*People v. Garcia* (2006) 39 Cal.4th 1070, 1091.)  As [petitioner] seems to acknowledge, he did not show Elizabeth's statements regarding her prostitution history were knowingly false—that is, that Elizabeth had the specific intent to testify falsely. (*People v. Viniegra* (1982) 130 Cal.App.3d 577, 584-585 [perjury requires specific intent to testify falsely].)  At the 402 hearing, Elizabeth initially denied having engaged in prostitution.  But when presented with the date of her arrest, Elizabeth acknowledged it and admitted engaging in prostitution.  Thus, the court could have reasonably concluded Elizabeth did not make a knowingly false statement under oath. (CALCRIM No. 2641 [actual belief the statement is true, even if mistaken, is a defense to perjury].)

The court also reasonably concluded Elizabeth did not make a knowingly false statement about the immunity agreement.  At the 402 hearing, Elizabeth did not remember receiving immunity, did not recall signing an immunity agreement, and did not recognize the signature on the immunity agreement. [Petitioner] did not establish Elizabeth's failure to remember the immunity agreement, or to recognize the signature on that agreement, 14 years later, was a lie.  Even if [petitioner] proved Elizabeth committed perjury at the 402 hearing, the court was within its discretion to exclude the evidence pursuant to section 352.  Proving up the conduct giving rise to the alleged perjury would consume an undue amount of time on a

> collateral issue, an issue with "'obvious potential for embarrassing or unfairly discrediting [Elizabeth].'" (*People v. Phillips* (2000) 22 Cal.4th 226, 234 [no error in excluding evidence of witness's prostitution history]; *People v. DeSantis* (1992) 2 Cal.4th 1198, 1226 [trial court properly excluded perjury evidence pursuant to section 352].)
>
> Assuming for the sake of argument the court erred by excluding the evidence, [petitioner] was not prejudiced. The jury knew Elizabeth used methamphetamine and that methamphetamine use may affect memory. The jury also heard evidence Elizabeth lied during her initial interview with the police. During closing argument, defense counsel assailed Elizabeth's trustworthiness, highlighting her bias against [petitioner] and the fact that she lied in her police interview. Therefore, it is not reasonably probable the jury would have had a significantly different impression of Elizabeth's credibility had it heard evidence she may have lied about engaging in prostitution and receiving immunity 14 years earlier. (*People v. Alcala* (1992) 4 Cal.4th 742, 789 [excluding impeachment evidence was not prejudicial; defense was not precluded from suggesting the witness was "suspect or unreliable"].)
>
> [Petitioner]'s undeveloped confrontation clause claim fails. "'[N]ot every restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance . . . . Thus, unless the defendant can show that the prohibited cross-examination would have produced 'a significantly different impression of [the witnesses'] credibility' [citation], the trial court's exercise of its discretion in this regard does not violate the Sixth Amendment. [Citation.]'" [Citation.] Even assuming the trial court had exercised its discretion to allow impeachment of [Elizabeth] [... ], no significantly different impression of h[er] credibility would have resulted here." (*People v. Dalton* (2019) 7 Cal.5th 166, 217.)

ECF No. 13-8 at 148-151.

The Confrontation Clause of the Sixth Amendment secures the opportunity of cross-examination. Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986). However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based upon concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. at 679.

A habeas petitioner meets his burden of demonstrating a Confrontation Clause violation by showing that "[a] reasonable jury might have received a significantly different impression of

[a witness'] credibility . . . had counsel been permitted to pursue his proposed line of cross-examination." Id. at 680. The focus of this inquiry is "on the particular witness, not on the outcome of the entire trial." Id. Then, under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), any error presented in a habeas action is harmless unless the error had substantial and injurious effect or influence in determining the jury's verdict.

The court finds that the Court of Appeal's decision rejecting petitioner's Confrontation Clause claim is neither contrary to, nor involved an unreasonable application of clearly established Supreme Court authority. Furthermore, the decision is not based on an unreasonable determination of the facts. The credibility of Elizabeth was already significantly undermined by the fact that she had lied to investigators and had used methamphetamine just prior to the time where her observations regarding petitioner's actions were relevant. Also, none of the evidence excluded concerned any specific bias Elizabeth might have against petitioner. Considering these facts and the nature of the evidence excluded, the court cannot find that limitation on the impeachment of Elizabeth ran afoul of the discretion afforded to trial courts by the Supreme Court in its Delaware v. Van Arsdall decision.

Further, petitioner makes no serious attempt to show that exclusion of the evidence had substantial and injurious effect on the jury's verdict. As indicated above, Elizabeth's credibility was already in question with evidence that was admitted. Whether she had been a prostitute in the past, whether she had received immunity from prosecution in 2004, and whether she lied about either one of those things were not going to tip the balance with the jury in any meaningful respect.

For these reasons, petitioner's third claim must be rejected.

IV. Evidentiary Hearing

Petitioner asks that the court hold an evidentiary hearing as to all three of his claims. Nothing before the court suggests further factual development would result in petitioner obtaining habeas relief. Accordingly, petitioner's request that the court hold an evidentiary hearing will be denied. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the

/////

applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.")

V. <u>Conclusion</u>

For the foregoing reasons, the court will recommend that petitioner's petition for a writ of habeas corpus be denied, and this case be closed.

Accordingly, IT IS HEREBY ORDERED that petitioner's request that the court hold an evidentiary hearing is denied.

IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for a writ of habeas corpus (ECF No. 1) be denied; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 29, 2024

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

---

1
will1531.157